**DOLE OCEAN LINER EXPRESS,**
Plaintiff/Petitioner

v.

**GEORGIA VEGETABLE COMPANY,**
Defendant/Respondent.

**Civil Action No. 1:95–CV–407RR.**

United States District Court,
S.D. Mississippi,
Southern Division.

Dec. 11, 1996.

D. Kirk Boswell, Gary A. Hemphill, Cynthia Anne Wegmann, Terriberry, Carroll & Yancey, New Orleans, LA, and Steven M. Schneebaum, Patton Boggs, L.L.P., Washington, DC, for Plaintiff/Petitioner.

Timothy D. Crawley, Hopkins, Dodson, Crawley, Bagwell, Upshaw & Persons, Gulfport, MS, for Defendant/Respondent.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This matter is before this Court on Motion of the defendant/respondent, Georgia Vegetable Company, Inc. (hereinafter "Georgia Vegetable"), for Summary Judgment, and on

Cross–Motion of the plaintiff/petitioner Dole Ocean Liner Express (hereinafter "Dole") for Summary Judgment.

This case has been remanded to this Court by the United States Court of Appeals for the Fifth Circuit to determine whether the arbitrators misinterpreted the provisions of the "Marketing Agreement" governing the relationship between respondent Georgia Vegetable and its supplier, the Nicaraguan company Manprosa. *See Dole Ocean Liner Express v. Georgia Vegetable Co.,* 93 F.3d 166, 167 (5th Cir.1996) (hereinafter "Dole II"). If the Marketing Agreement does not authorize Georgia Vegetable to assert claims against petitioner Dole on Manprosa's behalf for damages arising from Dole's breach of its Service Contract with Georgia Vegetable, then the arbitral decision awarding Manprosa damages must be vacated since Dole would have never agreed to arbitration, or even privity of contract, with Manprosa.

## I. GEORGIA VEGETABLE CANNOT POINT TO ANY AUTHORITY PERMITTING IT TO ARBITRATE WITH DOLE ON MANPROSA'S BEHALF.

█ The Court of Appeals originally found against Dole's submission that the arbitrators exceeded their authority in awarding to Georgia Vegetable damages representing alleged losses by Manprosa. The basis for this conclusion was the Court's belief that "Manprosa explicitly authorized Georgia Vegetable to handle any type of litigation concerning the onions, 'in its own name, just as if it were the owner of said onions.'" *Dole Ocean Liner Express v. Georgia Vegetable Co.,* 84 F.3d 772, 775 (5th Cir.1996) ("Dole I") (emphasis in original). "From Dole's perspective," wrote the Court, "the two entities were one for purposes of recovering under the [service] contract." *Id.* The Court noted that, to reach these determinations, it was relying on Respondent's (and the arbitrators') characterization of the Marketing

Agreement, which was not in the record on appeal.

The absence of the Marketing Agreement was an anomaly, since the document was part of the record of this Court,[1] and therefore should have been transferred to the Circuit in New Orleans. Petitioner moved to supplement the record by offering the Marketing Agreement and then asked the Court to reconsider its decision in light of what the Marketing Agreement actually says. The Fifth Circuit remanded as a result, directing this Court to consider whether the arbitrators exceeded their authority in interpreting the Marketing Agreement as conferring on Georgia Vegetable the right to seek damages from Dole on behalf of Manprosa as Manprosa's agent. That is now the issue before this Court, as it was previously when Georgia Vegetable defended the arbitral award to Manprosa on the basis of their alleged agency relationship based on the Marketing Agreement. Georgia Vegetable's arguments, while relying on new positions, remain unpersuasive, and this Court should once again find the Marketing Agreement does not authorize Georgia Vegetable to arbitrate with Dole on Manprosa's behalf.

Before this Court, and in the Court of Appeals, Georgia Vegetable argued that its authority to arbitrate with Dole on Manprosa's behalf arose from an unnumbered paragraph on page five of the Marketing Agreement, in which Manprosa assigned to it the right to "handle any type of litigation" regarding dissatisfaction over product quality on the part of an eventual consignee "in its own name just as if it were the owner of said onions." This was the authority of the arbitrators, and later the Court of Appeals, found to support the conclusion that Georgia Vegetable was Manprosa's "agent" ... until the Fifth Circuit actually read the Marketing Agreement. As noted, the rehearing was granted on this very point, and the Court noted that in construing the Marketing Agreement (as opposed to the Service Contract[2]), the views of the arbitrators are not

---

**1.** The Marketing Agreement is Tab A to the original Motion to Vacate Award, filed in this Court on August 10, 1995. Under Rule 11(a) of the Federal Rules of Appellate Procedure, it is an appellant's burden to see that the record is transmitted to the Clerk of the Court of Appeals.

**2.** The Service Contract between Dole and Georgia Vegetable is Tab B to the original Motion to

entitled to any special regard. *Dole II*, 93 F.3d at 167 ("While the arbitration panel had broad authority to interpret the contract between Dole and Georgia Vegetable under the terms of the contract, they do not have such extensive authority to interpret the marketing agreement between Georgia Vegetable and Manprosa.").

All this Court need do in order to appreciate the inapplicability of the cited language, and its failure to embrace the kind of case now presented, is to read it in its context. The provision on which Georgia Vegetable used to rely reads in full as follows:

> Should any purchaser be dissatisfied with any of the onions of the grower [*i.e.*, Manprosa], then the receiver [*i.e.* Georgia Vegetable] shall have the right and the responsibility to negotiate a settlement agreement, have said onion shipped to some other purchaser, file a claim under the Perishable Agricultural Commodities Act, handle any type of litigation, or take any other action related to said onions should the need arise. All of this shall be handled at the sole discretion and according to the best judgment of Georgia Vegetable Company, which may handle such matter in its own name just as if it were owner of said onions.

Marketing Agreement, p. 5.

Georgia Vegetable has now abandoned this argument, in an apparent concession that the provision obviously does not provide the requisite authority to represent Manprosa in a dispute with Dole, since Dole was not a purchaser of the onions dissatisfied with their quality. As Georgia Vegetable is now willing to concede the inapplicability of the sole provision upon which the arbitrators relied in finding an agency relationship between Georgia Vegetable and Manprosa, and for a correct interpretation of which the Court of Appeals remanded this case, that should be the end of the matter. Without any basis for doing so, the arbitrators exceeded their powers, misinterpreting the Marketing Agreement to find an agency relationship between Georgia Vegetable and Manprosa, and consequently including an award of Manprosa's damages in resolving the dispute before them between Georgia Vegetable and Dole.

As a result, Georgia Vegetable has attempted in its Motion for Summary Judgment to find some other authority creating a general principal-agent relationship; specifically, Georgia Vegetable cites the Court to ¶ IX of the Marketing Agreement, a provision never mentioned by the arbitrators, this Court, or the Court of Appeals. See Georgia Vegetable's Memorandum of Law in support of its motion (hereinafter "Georgia Vegetable Summary Judgment Memo."), at 7–8.[3] Dole submits said paragraph is just as clearly inapplicable to the dispute at Bar as the previous "authority." Paragraph IX reads in full as follows:

> THE GROWER [i.e., Manprosa] will retain title to the onions until they have been sold and will bear all risks of loss to the onions until such sale has been accomplished. If there is any loss due to damage during shipping and handling, THE RECEIVER [i.e., Georgia Vegetable] will file damage claims with the shipping company [i.e., Dole] and pursue said claims on behalf of and at the expense of [Manprosa].

Marketing Agreement, ¶ IX (emphasis added).

The Court of Appeals did not remand this case for this Court to determine independently the abstract question of whether Georgia Vegetable was Manprosa's agent. Rather, the question presented is only whether the arbitrators misinterpreted the Marketing Agreement as permitting Georgia Vegetable to arbitrate with Dole for damages allegedly suffered by Manprosa by virtue of Dole's failure to supply containers in a manner required by the Service Contract between Dole and Georgia Vegetable. The only provision upon which the arbitrators relied in so interpreting the Marketing

---

Vacate Award, filed in this Court on August 10, 1995.

**3.** According to Georgia Vegetable, this paragraph—never cited before by any adjudicator in this matter—"would not only permit, but would require Georgia Vegetable to pursue claims such as those involved in this case against Dole on behalf of Manprosa." Ga.Veg.S.J.Mem. at 7, emphasis in original.

Agreement was the aforementioned unnumbered paragraph allowing Georgia Vegetable to represent Manprosa in defending cases brought by *dissatisfied purchasers* of the onions. Thus, Dole submits that the only provision of the Marketing Agreement that should be subject to this Court's review is the one upon which the arbitrators relied. The Court agrees that said provision is inapplicable and does not support the award to Georgia Vegetable of damages on behalf of Manprosa.

Furthermore, Paragraph IX does not confer an agency relationship even if applied. This case does not involve a claim to onions during shipping and handling; it involves Dole's (admitted) failure to supply all of the containers it was required to tender pursuant to its contract with Georgia Vegetable. It could hardly be clearer that this is not what was contemplated by Paragraph IX, which provides that, although the risk of loss of the cargo would not pass from the consignor to Georgia Vegetable, the broker could file claims in the United States on behalf of its Nicaraguan seller if goods were damages or lost in shipment through the carrier's fault.

As the Fifth Circuit panel noted in its modification of the original opinion, the arbitrators are not entitled to deference in their interpretation of the Marketing Agreement, since that is not the contract under which they derived their authority. *Dole II,* 93 F.3d at 167. This Court concludes that Georgia Vegetable had authority to litigate[4] only one type of issue, should it arise: claims involving damage to or loss of the cargo during shipment. It had no power to litigate contract claims, especially under an agreement to which Manprosa was not a party (indeed, a contract that expressly provided at paragraph 12 that "neither party shall have any right or authority to assume or create any obligation binding upon the other").

■ This Court agrees that the arbitrators had no power under the contract to

enter an award to, and effectively to force Dole to arbitrate with, a non-party, and that in so doing, the panel "exceeded their powers," within the meaning of 9 U.S.C. § 10(a)(4). This Court therefore may vacate the award of the arbitrators, and substitute relief that is consistent with the facts and law.

The arbitrators incorrectly considered Manprosa's alleged injury and claim for relief in granting an award to Georgia Vegetable, and "exceeded their powers" within 9 U.S.C. § 10(a)(4). Thus their decision must be set aside. In addition, for the very reasons discussed by the Court of Appeals, once the award is so limited, this Court must also enforce the liquidated damages clause contained in the contract giving rise to this dispute.

II. ONCE MANPROSA'S DAMAGES ARE PROPERLY EXCLUDED, THE LIQUIDATED DAMAGES CLAUSE PROVIDES A REASONABLE ESTIMATE OF GEORGIA VEGETABLE'S ACTUAL INJURY.

■ Before this Court and the Court of Appeals, Dole argued that the arbitrators also exceeded their authority when they awarded damages far beyond those established under the liquidated damages provision agreed by the parties and bought and paid for as a part of their contract. The Fifth Circuit rejected this claim holding that under Mississippi law,[5] "liquidated damages provisions are not enforceable if they are not a *reasonable pre-estimation of damages.*" *Dole I,* 84 F.3d at 774 (emphasis added). The Court referred to the reasonableness test as a "legal standard." *Id.,* which an arbitral tribunal must apply to the evidence. In the view of the Fifth Circuit, the comparison performed by the arbitrators here between estimated (*i.e.,* liquidated) damages, and the claimed actual damages, which stood

---

4. Such litigation might have included prosecution of claims against the carrier, as provided in Paragraph IX, or defenses against claims from short-changed consignees, under the unnumbered provision upon which the arbitrators and the Court of Appeals relied.

5. There is no dispute over the proposition that Mississippi law is the law of decision. See Service Contract, ¶ 14.3.

in a ratio of 1:21.5,[6] showed that they correctly considered the applicable Mississippi standard. *Id.* There was no basis for appellate review of the conclusion that the pre-estimation was unreasonable.

But it is clear that the arbitrators determined the unreasonableness of the contractual litigated damages by comparing them with damages awarded not only to Georgia Vegetable but also to Manprosa. In finding that the liquidated damages provision did not provide "just and reasonable compensation," the panel expressly compared "[t]he $500 per container provision" to the "loss of approximately $10,728 per container." Arbitral decision at 6. The panel itself identified the $10,728 figure as the sum of $1,846.88, representing Georgia Vegetable's lost commission per container and $8,880.75, representing Manprosa's alleged loss of the sale price per container. *Id.* at 7.

The liquidated damages provision, however, was agreed by the parties to represent a pre-estimation only of Georgia Vegetable's damages in the event of Dole's breach, not of Georgia Vegetable's and Manprosa's behalf. The correct calculation, therefore, should have excluded Manprosa's claimed losses. It should have compared the $500 container liquidated damages provision with Georgia Vegetable's loss of $1,846.88. The proper ratio between estimated and actual damages that should be tested for reasonableness, then, is not 1:21.5, which the panel held was unreasonable, but 1:3.7. *See Patrick Petroleum Corp. of Mich. v. Callon Petroleum Co.,* 531 F.2d 1312, 1317 (5th Cir.) (quoting *Massman Constr. Co. v. City Council of Greenville, Miss.,* 147 F.2d 925, 928, n. 2 (5th Cir.1945)), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3175, 49 L.Ed.2d 1189 (1976); *Board of Trustees of State Ins. of Higher Learning v. Johnson,* 507 So.2d 887, 889–90 (Miss.1987). Whether a liquidated damages provision is reasonable is a matter of law for a court to decide.[7] *Farmers Export Co. v. M/V Georgis Prois,* 799 F.2d 159, 162 (5th Cir.1986) (whether liquidated damages clause is penalty "is a question of law for the court"); *Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.,* 821 F.Supp. 432, 440 (S.D.Miss. 1993).

Here the parties agreed that Dole would pay Georgia Vegetable $500 for each container that it failed to deliver. Service Contract ¶ 7.1. They also agreed that Georgia Vegetable would pay Dole $500 for each container delivered that it did not use. *Id.,* ¶ 5. That these estimates are reasonable becomes apparent when they are compared to the actual damages the parties might foreseeably suffer: $500 represents approximately 27 percent of Georgia Vegetable's actual lost commissions of $1,846.88 per container.[8] Had Georgia Vegetable defaulted on its obligations under the contract, Dole would have been entitled to liquidated damages of $500 per container, or 14.3 percent of the $3,500 per container contract price.[9]

Far from under-compensating Georgia Vegetable, then, the liquidated damages provision of the Service Contract between Dole and Georgia Vegetable was a reasonable pre-estimation of the latter's damages in the event of a breach of the agreement by Dole.[10]

---

**6.** Calculated by dividing $500, the liquidated damages, by $10,728, which the panel found to be the actual loss for both Manprosa and Georgia Vegetable.

**7.** The Fifth Circuit characterized the holding of the arbitral panel as being that "as a matter of law," the liquidated damages provision was void, because it was not a reasonable estimate of actual damages. *Dole I,* 84 F.3d at 774.

**8.** Georgia Vegetable's actual damages, of course, measured by lost commissions, could have been more or less depending upon the purchase price of the onions, which presumably depended on such external factors as the availability of supplies from the other sources, as well as Georgia Vegetable's diligence, skill, and luck in concluding contracts of purchase and resale.

**9.** Dole's actual damages too could have varied, depending, for example, upon whether it was able to mitigate by finding another shipper interested in using the containers.

**10.** Georgia Vegetable cannot legitimately argue that liquidated damages representing almost one-third of its loss are unconscionable. *See Patrick,* 531 F.2d at 1316, n. 5 (defining "an unconscionable contract as 'one such as no man in his senses and not under a delusion would make on the one hand, and as honest and fair man would accept on the other.' ") (quoting *Terre Haute Cooperage, Inc. v. Branscome,* 203 Miss. 493, 35 So.2d 537, 541 (1948)).

By impermissibly including Manprosa's damages in their analysis of the liquidated damages provision between Dole and Georgia Vegetable, the arbitrators exceeded the powers granted them under the contract.. They held that a ratio between liquidated and actual damages of 1:21.5 is unreasonable, and invalidates the liquidated damages clause as a matter of law. This is the answer to the wrong question since it includes in Georgia Vegetable's actual damages an amount representing the claimed loss on the part of Manprosa. The correct ratio to assay for reasonableness is 1:3.7. As a matter of law, a liquidated damages provision of a contract that estimates damages to be 27 percent of the amount later awarded is well within the bounds of what is commercially and practically reasonable. The rejection of the liquidated damages clause in the Service Contract as an unreasonable estimate of Georgia Vegetable's actual loss was outside the authority of the arbitrators, who had no power to ignore the terms of the contract, or absent unconscionability or unreasonableness, to refuse to apply the parties' agreed terms.

## III.  NOTHING IN GEORGIA VEGETABLES' MOVING PAPERS COMPELS A DIFFERENT RESULT

Georgia Vegetable moves for summary judgment without raising any argument, or citing any case, in defense of the proposition that it had the authority to pursue damages claims on behalf of Manprosa. It cannot be inferred in the instant case—that broad language in an arbitration agreement without more is sufficient to require a party to the contract to arbitrate with a non-party. *First Options of Chicago, Inc. v. Kaplan,* — U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In fact, as the record well reflects, and the arbitrators found, Dole refused to contract with Manprosa, and rights and obligations under the Service Contract were expressly limited to the signatories.[11]

Any award by the arbitrators to Manprosa was clearly outside the scope of their powers as defined by the Service Contract enabling the arbitration, since Manprosa was not a party and Georgia Vegetable had no contractual authority to litigate on its behalf. Furthermore, the arbitrators' assessment of the liquidated damages clause's validity is equally tainted, because they analyzed whether the clause was a reasonable estimate of compensation that might eventually be payable to both Manprosa and Georgia Vegetable, again considering an award to a non-party. As this Court previously held, the liquidated damages provision was a fair limitation of the damages agreed to in advance by the only two parties the arbitrators should have considered. For all the foregoing reasons, the arbitral award of $665,113.06 (less an uncontested setoff of $14,000) was in excess of the authority of the arbitrators, and therefore, pursuant to 9 U.S.C. § 10(a)(4), will be set aside.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion of the defendant/respondent, Georgia Vegetable Company, Inc., for Summary Judgment, is hereby **DENIED;**

**IT IS FURTHER ORDERED AND ADJUDGED** that the Cross–Motion of the plaintiff/petitioner, Dole Ocean Liner Express, for Summary Judgment is hereby **GRANTED** and it is hereby **ORDERED:**

1) that the arbitrators' decision is hereby **VACATED** inasmuch as it makes any award to Manprosa; and

2) that any award in the arbitrators' decision to Georgia Vegetable Company is hereby limited to a recovery of liquidated damages provided under the Service Contract. Accordingly,

**IT IS FURTHER ORDERED AND ADJUDGED** that the award assessed against Dole be entered in the amount of $17,000 (liquidated damages of $500 per breach multiplied by 62 breaches, less $14,000) in undisputed freight charges owed to Dole Ocean Liner Express and that the parties shall submit by December 23, 1996, a Final Judgment to be entered in accordance with the

---

11.  As this Court previously found, "no one disputes that 'Dole has never agreed, by work or deed, to arbitrate any dispute it might have with Manprosa, with whom it was not even in privi-

ty.'"  *Dole Ocean Liner Express v. Georgia Vegetable Co., Inc.,* 1995 WL 846693 *3 (S.D.Miss., Nov. 22, 1995).

foregoing Memorandum Order pursuant to Rule 58 of the Federal Rules of Civil Procedure and Rule 9 of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi.